UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE LEE HARPER,

          Petitioner,

v.                                                           8:09-cv-0091-T-17TBM

SECRETARY OF THE DEPARTMENT OF CORRECTIONS,

          Respondent.
_____/

## ORDER

Petitioner, Willie Lee Harper ("Harper"), filed a 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his May 1, 2007 disciplinary proceedings before the Hardee Correctional Institution Disciplinary Team (Dkt. 1). Harper provided, as exhibits to his petition, copies of all documents relative to the disciplinary hearing. A review of the exhibits and the applicable case law demonstrates that, for the following reasons, Harper's petition must be denied.

## Background

Harper is an inmate at the Hardee County Correctional Institution. On April 26, 2007, the Hardee County Correctional Institution Disciplinary Team Provided Harper with a Charging Disciplinary Report. (Dkt. 1, Exhibit A), which

contained the following Statement of Facts:

> On April 25, 2007 at approximately 6:20 p.m. I was conducting urine sample collections in a secure location of the property room. Inmate Harper, Willie DC# 105186 was ordered to submit a urine sample in compliance with random urinalysis testing. Inmate Harper was given an ample opportunity (one hour) to comply with all lawful orders to submit a urine sample. Inmate Harper was offered eight ounces of water twice during the one hour time frame, once after he failed to produce a urine sample in the beginning, and again thirty minutes later. An acknowledgment of the beverage form was completed on inmate Harper. After the one hour time frame, had expired, Harper failed to produce a urine sample for testing. Medical was contacted and nurse N. Pahl verified that there was no medical condition to prevent Harper from providing a urine sample. Inmate Harper was placed into administrative confinement pending a disciplinary hearing.

The April 26, 2007 Charging Disciplinary Report provided Harper with the following Notice:

> No hearing shall commence prior to 24 hours of delivery of charges except when the Inmates Release date does not allow time for such notice or the inmate waives the 24 hour period authorized in Rule 33-501, Florida Administrative Code.

The Charging Disciplinary Report also advised Harper:

> As an Inmate being charged with a violation of the rules of prohibited conduct, you are advised the following: Investigation: An impartial investigation will be conducted on this disciplinary report. During the investigation of the disciplinary report, you will be advised of the charges against you and you may request staff assistance. During the

> investigation you should make known any witnesses to the investigating officer. The testimony of witnesses shall be presented by written statements. See Rule 33-601.307(3) for complete information regarding witnesses. You will have the opportunity to make a statement in writing regarding the charge and to provide information relating to the investigation.

In addition, the Charging Disciplinary Report advised Harper that he would receive a copy of the charges 24 hours prior to the time of the disciplinary hearing and advised him as to how the hearing would be conducted:

> The decision will be made in advance whether the hearing will be conducted by the disciplinary team or the hearing officer. You may request a hearing by the full disciplinary team rather than the hearing officer. You will appear in person before the disciplinary team/hearing officer unless you waive this appearance by signing a waiver form. You will be advised of the charges placed against you and the range of penalty if found guilty. You may request staff assistance. The chairperson/hearing officer will read the statement and ask you for your plea. A guilty plea requires no further statement; however, you may make a statement for the team/hearing officer to consider. A no contest plea will be treated as a guilty plea. A refusal to enter a plea will be treated as a not guilty plea. If you enter a not guilty plea, you will be allowed to make a statement on your own behalf, present evidence and request staff or inmate witnesses as deemed appropriate by the team/hearing officer. After the team/hearing officer has made a decision, you will be advised verbally and in writing as to the decision and the evidence relied upon in making that decision. If you are found guilty, you will be advised verbally and in writing as to the recommended penalty.

The Charging Disciplinary Report further advised Harper that if he were found guilty, he could file an administrative appeal. Harper declined staff

assistance and he was present at the May 1, 2007, disciplinary hearing. Harper requested a postponement to see the doctor, but the Disciplinary Team denied the request because the Team had the nurse's statement. (Dkt. 1, Exhibit B). The Disciplinary Team found Harper guilty "based on the reporting officer's observation that inmate Harper failed to produce a urine sample in compliance with random urinalysis statement. Inmate Harper was offered eight ounces of water twice during the one hour time frame. After the hour, Inmate Harper failed to produce a urine sample. All witness statements were read and considered by the team." (Dkt. 1, Exhibit B). Harper lost 60 days of gain time and was sentenced to 60 days in disciplinary confinement as a result of the Disciplinary Team's findings. (Dkt. 1, Exhibit B).

On May 8, 2007, Harper filed a grievance with the warden, which was denied on May 23, 2007. (Dkt. 1, Exhibit C). Harper next filed administrative appeal with the Secretary of the Florida Department of Corrections on May 29, 2007. (Dkt. 1, Exhibit D). A response entered on July 28, 2007, denied the appeal on the grounds that Harper had not presented sufficient evidence or information to warrant overturning the disciplinary report. (Dkt. 1, Exhibit D). Following the denial of his administrative appeal, Harper filed a petition for writ of mandamus in the Circuit Court for the Second Judicial Circuit, Leon County, Florida on or about August 31, 2007. The Circuit Court denied Harper's petition on January 10, 2008. (Dkt. 1 at 2). Harper filed a writ of certiorari with the First

District Court of Appeals to appeal the denial of relief. (Dkt. 1 at 2). According to Harper, on October 6, 2008, the District Court affirmed the state trial court's decision. (Dkt. 1 at 2). Having exhausted his administrative and state court remedies, Harper filed the present federal petition for writ of habeas corpus with this Court on January 21, 2009. (Dkt. 1). As grounds for this petition, Harper asks whether the trial court departed from the essential requirements of law in denying his claim that Respondent failed follow its own rules governing specimen collection and denied petitioner due process of law in the disciplinary proceeding. (Dkt. 1 at 3, 5).

## **Standard of Review**

Under Florida law, a prisoner may seek judicial review of a final administrative decision by filing a petition for an extraordinary writ in the appropriate state circuit court. Fla. R. App. P. 9030(c), 9.100. A petition challenging an order of the Department of Corrections in a prisoner disciplinary proceeding must be filed within thirty days of rendition of the Order. Fla. R. App. P. 9.100 (c)(4). A circuit court's review is appellate in nature. Fla. R. App. P. 9.030(b)(2)(B). A petitioner may seek review of a circuit court's denial of relief by filing a petition for writ of certiorari in the appropriate state district court of appeal. Fla. R. App. P. 9.030(b)(2)(B). Once the reviewing district court of appeal denies relief, an inmate has exhausted his state court remedies. See Phillip Padovano, Civil Practice , 5 Fla. Prac. § 30:5 (West 2009 ed.).

In Smith v. Rabalais, 659 F. 2d 539, 545 (5th Cir.1981), cert. denied, 455 U.S. 992 (1982) (footnotes omitted), though the United States Supreme Court acknowledged that courts are required to recognize a constitutional duty to protect prisoners' rights, it also restated its policy of minimum intrusion into the affairs of state prison administration because "state prison officials enjoy wide discretion in the operation of state penal institutions." Williams v. Edwards, 547 F. 2d 1206, 1212 (5th Cir.1977); Campbell v. Beto, 460 F. 2d 765, 767 (5th Cir.1972); Breeden v. Jackson, 457 F. 2d 578, 580 (4th Cir.1972).

The federal courts cannot assume the task of retrying all prison disciplinary disputes. However, the federal courts must consider whether the decision is supported by "some facts"—that is, "whether any evidence at all" supports the action taken by the prison officials. Willis v. Ciccone, 506, F. 2d 1011, 1018, 1019 n. 11 (8th Cir. 1974).

The Eleventh Circuit has held that the district court need only inquire into whether there is "any basis in fact" for the disciplinary team's decision. Inglese v. Warden, 687 F. 2d 362, 363 (11th Cir. 1982). With regard to administrative decisions revoking a protected liberty interest, such as Harper's 60-day disciplinary confinement and 60-day loss of gain time at issue here, the United States Supreme Court has held that due process demands only that there be "some evidence" to support a disciplinary office's decision. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985) (noting, "The

fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."). In Hill, the Supreme Court determined that requiring a modicum of evidence helps to prevent arbitrary and capricious decisions in the administrative setting. 472 U.S. at 454. The Hill decision also recognized that the fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have "some basis in fact." Id.

In examining the facts, a reviewing court is not required to examine the entire record of a disciplinary proceeding, independently assess witness credibility, or weigh the evidence. Id. Additionally, a reviewing court is not required to examine the entire record of a proceeding, independently assess witness credibility, or weigh the evidence in ascertaining whether the due process standard is satisfied in an administrative proceeding. 472 U.S. at 455. Consequently, the scope of a reviewing court in this circumstance is quite narrow.

## Discussion

### I. The Reviewing Courts Did Not Depart from the Essential Requirements of Law.

Harper's petition asks this Court to determine whether the state district court of appeal departed from the essential requirements of law in its affirming the decision of the state trial court. If there is some evidence or any basis in fact to support the Disciplinary Team's findings, then a court is not permitted to

overturn the findings. Here, the disciplinary report, with its statement of facts, its delivery of charges, its report of investigation, and the disciplinary team's action, shows a "basis in fact" for the decision. The state trial court and the district court of appeal did not depart from the essential requirements of law because the record evidence provides bases in fact for each court's decision. Harper has failed to provide sufficient evidence for this Court, or any court, to determine that the Disciplinary Team's findings had no basis in fact and were either arbitrary or capricious. The state district court of appeal properly affirmed the state trial court's decision.

## II. Harper Received Due Process in his Prison Disciplinary Proceedings

The record evidence also supports a finding that the Hardee Correctional Institution did not violate Harper's due process rights. As an initial matter, this Court notes that prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights that are due a defendant in a criminal proceeding does not apply. Carter v. Thompson, 808 F. Supp. 1548, 1554 (M.D. Fla. 1992) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)) (citation omitted). In a prison setting, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." 808 F. Supp. 1548, 1554 (citing Wolff, 418 U.S. at 556).

To meet the constitutional mandate in these settings, prisoners must be

provided advance written notice to inform them of the charges against them in disciplinary actions, and to enable them to marshal the facts and prepare a defense. Wolff, 418 U.S. at 564 (citation omitted). Notice must be given only for hearings which could result in a major change in the prisoner's condition of confinement, such as a loss of gain time or solitary confinement. Wolff, 418 U.S. at 572 n. 19. Minimum procedures that must be followed in disciplinary hearings include: 1) providing advance written notice to the accused of the claimed violation; 2) providing a written statement by the fact-finder of the evidence relied upon and reasons for the disciplinary action taken; and 3) allowing the accused inmate to present witnesses and documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Wolff, 418 U.S. at 563.

The purpose of the written notice of the charges is to inform the inmate of the charges and to enable him to marshal the facts and prepare a defense. Wolff, 418 U.S. at 564. Procedural due process also requires that the inmate receive no less than twenty-four (24) hours notice to prepare for the appearance before the disciplinary committee. Id. Finally, the inmate must receive a written statement as to the evidence relied on and the reasons for the disciplinary action. Id.

The exhibits accompanying Harper's petition are sufficient evidence to demonstrate that the constitutionally-required procedures were followed before

and during his disciplinary hearing.  On April 25, 2007, Harper received a request to submit to a random urinalysis. Harper claimed an inability to provide an adequate urine specimen.  He was detained in the presence of Officer Downing for a period of one (1) hour.   During that time, Officer Downing allowed Harper to consume one cup (8 oz.) of water every ½ hour.  Officer Downing completed an Acknowledgment of Beverage Form on Harper.   Harper's petition also states he advised the Officer Downing that his inability to urinate resulted from a "shy" or "bashful bladder", a medical condition also known as paruresis.  Officer Downing advised Harper he would contact the medical staff to verify that inmate Harper possessed a specific medical condition or that Harper was taking medication that inhibited Harper from urinating within the designated time frame.   Officer Downing confirmed with Nurse N. Pahl that Harper had no documented medical condition that would prevent him from providing a urine specimen under the conditions and within the time frame provided.  Because Harper remained unable to submit a urine specimen, he was considered to have refused to provide a urine specimen.   Harper received administrative confinement pending a disciplinary hearing.

Harper received advanced written notice on of the claimed violation on April 26, 2007. The Disciplinary Team prepared and delivered a disciplinary report providing Harper with notice of the disciplinary charges against him and the ensuing investigative and administrative proceedings that would follow

delivery of the notice. The notice advised Harper of his right to present written witnesses statements and documentary evidence in his defense. This notice also advised Harper of his right to file an filed an administrative appeal. Harper received more than the required twenty-four hours to prepare a defense. At the disciplinary hearing on May 1, 2007, the Disciplinary Team found Harper guilty and provided Harper with a written statement describing the evidence relied on and the reasons for the disciplinary action.

Notably, Harper does not claim, and the evidence does not suggest, that the Disciplinary Team hampered or prevented Harper's ability to seek administrative and judicial relief. To the contrary, Harper exhausted his administrative and state court remedies before filing this petition. The evidence supports that Harper had the due process to which he was entitled. Because Harper cannot show his constitutional rights were violated, he is not entitled to federal habeas corpus relief.

Accordingly, it is

**ORDERED** that Harper's petition for writ of habeas corpus is **DENIED**. The Clerk is directed to enter judgment against Harper and to close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Harper is not entitled to a certificate of appealability.

A prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of APPEAL ABILITY (COA). Id. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282, (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484, (2000)) or that "the issues presented were 'adequate to deserve encouragement to proceed further.' " Miller-El v. Cockrell, 537 U.S. 322, (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Harper has not made the requisite showing in these circumstances. Because Harper is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 20, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE